## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                         :    Chapter 11
                                               :
LIBBEY GLASS INC., et al.,¹                    :    Case No. 20-11439 (LSS)
                                               :
              Debtors.                         :    (Jointly Administered)
                                               :    Re: Docket Nos. 16 and 72
-------------------------------------------------------- x
```

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), requesting, among other things:

1.      authorization for the Borrowers (as defined below) to obtain postpetition financing pursuant to the DIP Facilities (as defined below), and for each of the Guarantors (as defined in the DIP Term Agreement (as defined below)) and Loan Guarantors (as defined in DIP

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Libbey Glass Inc. (4107), Libbey Inc. (9357), Libbey.com LLC (6913), Syracuse China Company (1904), The Drummond Glass Company (0383), LGC Corp. (6034), LGAC LLC (0497), World Tableware Inc. (1231), LGFS Inc. (0975), LGAU Corp. (5531), LGA4 Corp. (5673), and LGA3 Corp. (1505). The Debtors' address is P.O. Box 10060, Toledo, Ohio 43699-0060.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

ABL Credit Agreement (as defined below)) to guarantee unconditionally, on a joint and several basis, and subject to the terms and limitations set forth in the DIP Agreements (as defined below) in all respects, the applicable Borrowers' obligations under the respective DIP Facilities (and, in addition, the Prepetition Dutch Loans (as defined below)), consisting of:

(a)    a senior secured superpriority asset-based revolving credit facility (the "***DIP ABL Facility***"), on the terms and conditions substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended or otherwise modified from time to time, the "***DIP ABL Credit Agreement***," and, together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, including the Interim Order and this Final Order (each as defined below), collectively, the "***DIP ABL  Documents***"), by and among Libbey Glass Inc., a Delaware corporation ("***US Borrower***"), Libbey Europe B.V., a limited liability company incorporated in the Netherlands ("***Netherlands Borrower***", together with US Borrower, collectively, the "***DIP ABL Borrowers***"), the Loan Guarantors (as defined in the DIP ABL Credit Agreement) (together with the DIP ABL Borrowers, the "***DIP ABL Obligors***"), JPMorgan Chase Bank, N.A. ("***JPM***"), as administrative agent (in such capacity, the "***DIP ABL Agent***"), and the lenders from time to time party thereto (in such capacity, the "***DIP ABL Lenders***" and, together with the DIP ABL Agent, the Issuing Bank (as defined in the DIP ABL Credit Agreement) and any affiliate of any DIP ABL Lender that has provided or may provide Banking Services or Swap Agreements (each as defined in the DIP ABL Documents) to Libbey Inc. or its subsidiaries, the "***DIP ABL Secured Parties***"), in an aggregate principal amount of up to $100,000,000 in revolving commitments available for borrowing  (subject to availability) by the DIP ABL Borrowers (such commitments, the "***DIP ABL Commitments***," and the loans outstanding under any of the DIP ABL

US-DOCS\116793113.8RLF1 23655575v.1

Commitments from time to time (the "***DIP ABL Loans***"); which DIP ABL Facility includes the repayment (or deemed repayment) of Prepetition ABL Obligations and corresponding dollar-for-dollar increase in the DIP ABL Loans and the assumption or deemed re-issuance of Letters of Credit, Banking Services Obligations and Swap Obligations (as each term is defined in the Prepetition ABL Credit Agreement) under the DIP ABL Facility; and

(b)    a senior secured superpriority multi-draw term loan facility (the "***DIP Term Loan Facility***," and, together with the DIP ABL Facility, collectively, the "***DIP Facilities***"), on the terms and conditions substantially in the form annexed hereto as **Exhibit B** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "***DIP Term Loan Agreement***," and, together with the DIP ABL Credit Agreement, collectively, the "***DIP Agreements***" and the DIP Term Loan Agreement, together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, including the Interim Order and this Final Order, collectively, the "***DIP Term Loan Facility Documents***," and the DIP Term Loan Facility Documents, together with the DIP ABL Documents, the "***DIP Documents***"), by and among Libbey Glass Inc. (the "***DIP Term Loan Borrower***," and together with the DIP ABL Borrowers, the "***Borrowers***"), the Guarantors (as defined in the DIP Term Loan Agreement) (together with the DIP Term Loan Borrower, the "***DIP Term Loan Obligors***" and the DIP Term Loan Obligors, together with the DIP ABL Obligors, the "***DIP Obligors***"), Cortland Capital Market Services LLC ("***Cortland***"), as administrative agent and collateral agent (in such capacities, the "***DIP Term Loan Agent***," and, together with the DIP ABL Administrative Agent, the "***DIP Agents***"), and the lenders party thereto from time to time (the "***DIP Term Loan Lenders***," and, together with the DIP Term Loan Agent, the "***DIP Term Facility Secured Parties***," and the DIP Term

3

Loan Lenders, together with the DIP ABL Lenders, the "*DIP Lenders*," and the DIP Term Facility Secured Parties, together with the DIP ABL Secured Parties, collectively, the "*DIP Secured Parties*"), (x) in new money term loans in an aggregate principal amount of up to $60,000,000 in term loan commitments (the "*DIP New Money Term Loan Commitments*," and, together with the DIP ABL Commitments, the "*DIP Commitments*", and the loans outstanding under any of the DIP New Money Term Loan Commitments from time to time, collectively, the "*DIP New Money Term Loans*,"), and (y) the roll-up of Prepetition Term Loans (as defined below) in an aggregate amount of up to $60,000,000 (the "*Partial Term Roll-Up Loans*," and together with the DIP New Money Term Loans and the DIP ABL Loans, the "*DIP Loans*") on a dollar-for-dollar basis, pursuant to which, (i) upon entry of the Interim Order and satisfaction or waiver of the other conditions set forth herein and in the DIP Term Loan Facility Documents, the DIP Term Loan Borrower shall (x) make a single draw of DIP Term Loans under the DIP New Money Term Loan Commitments in the principal amount of $30,000,000 and (y) borrow (or be deemed to borrow) Partial Term Roll-Up Loans in an aggregate principal amount of $30,000,000; and (ii) upon entry of this Final Order and satisfaction or waiver of the other conditions set forth therein and in the DIP Term Loan Facility Documents, (x) make a final draw in the principal amount of $30,000,000 and (y) borrow (or be deemed to borrow) Partial Term Roll-Up Loans in an aggregate principal amount of $30,000,000 (resulting in Partial Term Roll-Up Loans of $60,000,000 in the aggregate).

2.      authorization for the Debtors to execute, deliver, and enter into the DIP Documents, including the Amended and Restated Intercreditor Agreement (as the same may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "*DIP Intercreditor Agreement*"), and to perform all of the Debtors' respective

4

obligations thereunder, and such other and further acts as may be required in connection with the DIP Documents;

3.    authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Secured Parties pursuant to and in accordance with the DIP Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, backstop fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the respective DIP Secured Parties (including the reasonable fees, expenses and other charges of each of the DIP Secured Parties' attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting obligations of a Borrower and/or DIP Obligor of any kind under the DIP Documents (such obligations as to the DIP ABL Facility (including all "Banking Services Obligations" and "Swap Obligations" (each as defined in the DIP ABL Credit Agreement), the "*DIP ABL Obligations*," such obligations as to the DIP Term Loan Facility, the "*DIP Term Loan Obligations*," and, collectively, the "*DIP Obligations*");

4.    authorization for the Debtors to convert $1.00 of Prepetition Term Loans held by the DIP Term Loan Lenders into Partial Term Roll-Up Loans for each $1.00 of DIP Term Loans funded by the DIP Term Loan Lenders, (x) upon entry of the Interim Order, up to an aggregate amount of $30,000,000, and (y) upon entry of this Final Order, up to an additional aggregate principal amount of $30,000,000 (resulting in Partial Term Roll-Up Loans of $60,000,000 in the aggregate);

5.    authorization for the Debtors to use proceeds of the DIP Facilities (collectively the "*DIP Loan Proceeds*") as expressly provided in the DIP Documents and solely in accordance

US-DOCS\116793113.8RLF1 23655575v.1

with the Interim Order, this Final Order and the applicable Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Documents, the Interim Order and this Final Order) to: (a) pay costs, fees, and expenses related to the above-captioned cases (collectively, the "***Chapter 11 Cases***") and in connection with the DIP Facilities; (b) solely with respect to proceeds of the DIP ABL Facility, upon entry of this Final Order, to repay any remaining Prepetition ABL Obligations, other than the Prepetition Dutch Loans (as defined below); (c) make permitted adequate protection payments in respect of the Prepetition Obligations (as defined below) as provided for in the Interim Order and this Final Order; and (d) provide financing for working capital and for other general corporate purposes of the Debtors;

6.      the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Agents, for the benefit of themselves and the respective other DIP Secured Parties, in respect of all DIP Obligations, subject only to the Carve Out (as defined below) and subject to the rankings and priorities set forth in the Interim Order, this Final Order and the DIP Intercreditor Agreement;

7.      authorization to grant the DIP Secured Parties valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the Carve Out, the Permitted Liens (as defined below), and the relative rankings and priorities set forth in the Interim Order, this Final Order and the DIP Intercreditor Agreement;

US-DOCS\116793113.8RLF1 23655575v.1

8.      authorization for the Debtors to provide adequate protection of the interests of the Prepetition ABL Agents (as defined below) and the Prepetition ABL Secured Parties (as defined below) in the Prepetition ABL Priority Collateral (as defined below) through (x) the assumption and re-issuance (or deemed re-issuance) of Prepetition ABL Obligations consisting of Letters of Credit, Banking Services Obligations and Swap Obligations (each as defined in the Prepetition ABL Credit Agreement) under the DIP ABL Facility, (y) the deemed application of all Cash Collateral consisting of proceeds of (a) Prepetition ABL Priority Collateral in or coming into the possession or control of the Debtors (but not including, for the avoidance of doubt, DIP Term Loans funded into the Funding Account), (b) the Debtors' assets that are subject to the Prepetition ABL Adequate Protection Liens (as defined below), and (c) any and all of the Debtors' assets (other than proceeds of the DIP Term Loan Facility that are not used by the Debtors in accordance with the Specified Budget (as defined below) to repay the Prepetition ABL Obligations and the DIP Term Loans funded into the Funding Account) (and for the avoidance of doubt excluding the proceeds of Prepetition Term Priority Collateral (as defined below) to the extent set forth in the DIP Intercreditor Agreement) that are subject to liens granted to the DIP ABL Agent under the Interim Order or this Final Order, in each case, in reduction of the Prepetition ABL Obligations (other than the Prepetition ABL Obligations consisting of loans extended to Libbey Europe B.V. under the Prepetition ABL Facility (the "**_Prepetition Dutch Loans_**"), which, as of the Petition Date, are in an approximate outstanding principal amount of $17,200,000[3]), with deemed concurrent dollar-for-dollar funding of DIP ABL Loans and (z) the deemed repayment and refinancing of all other outstanding Prepetition ABL Obligations (other than Prepetition Dutch Loans) then outstanding with a concurrent deemed funding of DIP ABL Loans in such amount;

---

[3]      The Prepetition Dutch Loans were extended in Euros and are in the principal amount of €15,500,000

7

9.      authorization for the Debtors to use, among other things, solely in accordance with the Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents, the Interim Order and this Final Order) and the limitations provided in the Interim Order, this Final Order and in the DIP Documents, and subject to the prior application (or deemed application) to the Prepetition ABL Obligations in accordance with the Interim Order, this Final Order and the DIP Documents, any Cash Collateral in which any of the Prepetition Secured Parties (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any postpetition diminution in the value of their respective interests in the Prepetition Collateral, to the fullest extent set forth in the Bankruptcy Code or other applicable law ("***Diminution in Value***");

10.     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order, the Interim Order and the other DIP Documents to the extent hereinafter set forth;

11.     a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral, and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

12.     the United States Bankruptcy Court for the District of Delaware's (the "***Court***") waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order; and

13.     granting the Debtors such other and further relief as is just and proper.

The interim hearing on the Motion having been held by the Court on June 2, 2020 (the "***Interim Hearing***"); and upon the record made by the Debtors at the Interim Hearing, including the Motion [Docket No. 16], the *Declaration of Brian Whittman in Support of First Day Relief*

8

[Docket No. 17] (the "*First Day Declaration*") and the *Declaration of Brian Whittman in Support of the DIP Motion* [Docket No. 38] and the *Declaration of Jason Cohen in Support of the DIP Motion* [Docket No. 39] (collectively, the "*DIP Loan Declarations*"); and upon the record made by the Debtors at the hearing held before this Court on July 2, 2020 to consider entry of this Final Order (the "**Final Hearing**"); and the Court having entered, after the Interim Hearing, that certain *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 72] (the "**Interim Order**"); any exhibits filed in connection with the foregoing, and the filings and pleadings filed in these Chapter 11 Cases, the Court having found that the relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "**Estates**"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses; it appearing to the Court that granting the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and appropriate and adequate notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing (the "**Notice**") having been given under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) the United States

9

Attorney for the District of Delaware; (c) the Internal Revenue Service; (d); the United States Securities and Exchange Commission; (e) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (f) respective counsel to the DIP Agents and the Prepetition Agents (as defined below); (g) counsel to the Lender Group (as defined in the DIP Term Loan Agreement); (h) all parties which, to the best of the Debtors' knowledge, information, and belief, have asserted or may assert a lien in the Debtors' assets; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "*Notice Parties*"); and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

### THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

A.        Petition Date.  On June 1, 2020 (the "*Petition Date*"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in any of the Chapter 11 Cases.

B.        Jurisdiction and Venue.  The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), the Debtors

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

US-DOCS\116793113.8RLF1 23655575v.1

consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Local Rules 4001-2 and 9013-1.

C.       Committee Formation.   On June 11, 2020, the official committee of unsecured creditors (the "*Committee*") was appointed.

D.       Notice.   The Notice was given in the manner described in the Motion. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Order, the Final Hearing, and the relief granted under this Final Order constitutes due and sufficient notice thereof.

E.       Parties' Acknowledgments, Agreements, and Stipulations.   In requesting the DIP Facilities and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Secured Parties and the Prepetition Secured Parties for agreeing to provide, or consent to, the DIP Facilities, access to Cash Collateral, and subordination of the Prepetition Liens (as defined below), as provided herein and in the Interim Order, and as a condition to providing financing under the DIP Facilities and consenting to the use of Cash Collateral as set forth herein and in the Interim Order, subject to the rights of the parties-in-interest (other than the Debtors) set forth in paragraph 15 of this Final Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)       Prepetition ABL Facility.   Libbey Glass Inc. ("*Prepetition US Borrower*") and Libbey Europe B.V. ("*Prepetition Dutch Borrower*", and together with

11

Prepetition US Borrower, collectively, "***Prepetition Borrowers***"), certain other parties designated as "Loan Guarantors" thereto (such parties, collectively, the "***Prepetition ABL Obligors***"), the lenders from time to time party thereto (collectively, the "***Prepetition ABL Lenders***"), JPM, as administrative agent with respect to the US loans thereunder, J.P. Morgan Europe Limited, as administrative agent with respect to the Netherlands loans thereunder ("***JPMEL***", and together with JPM and in such capacities, the "***Prepetition ABL Agents***" and, together with the Prepetition ABL Lenders, the Issuing Bank (as defined in the Prepetition ABL Credit Agreement) and any affiliate of any Prepetition ABL Lender providing Banking Services or Swap Agreements (each as defined in the Prepetition ABL Credit Agreement), the "***Prepetition ABL Secured Parties***" ), and the other titled agents party thereto, are parties to that certain Amended and Restated Credit Agreement, dated as of February 8, 2010 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Prepetition ABL Credit Agreement***" and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition ABL Agents and the Prepetition ABL Secured Parties, including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "***Prepetition ABL Loan Documents***").  The Prepetition ABL Credit Agreement provided the Prepetition ABL Borrowers with an asset-based credit facility (the "***Prepetition ABL Facility***") with $100,000,000 of maximum aggregate availability thereunder, which was subject to borrowing bases (as reduced by reserves), as set forth in the Prepetition ABL Credit Agreement.  As of the Petition Date, the Debtors were justly and

12

lawfully indebted and liable, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of outstanding loans of not less than $66,954,400.00 and the face amount of letters of credit issued thereunder of $9,419,321.29 plus Swap Obligations (as defined in Prepetition ABL Credit Agreement) in an aggregate amount of not less than $22,404,935 plus accrued and unpaid interest and fees, amounts owing and liabilities on account of Banking Services Obligations (as such term is defined in the Prepetition ABL Credit Agreement), expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition ABL Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (in each case to the extent constituting "Secured Obligations" under and as defined in the Prepetition ABL Credit Agreement, collectively, the "***Prepetition ABL Obligations***", and together with DIP ABL Obligations, the "***ABL Obligations***"), which obligations are guaranteed on a joint and several basis by all of the Loan Guarantors (as defined in the Prepetition ABL Credit Agreement) provided that the Netherlands Loan Guarantors (as defined in the Prepetition ABL Credit Agreement guarantied only the Netherlands Secured Obligations (as defined in the Prepetition ABL Credit Agreement) under the Prepetition ABL Credit Agreement.  The Prepetition ABL Facility is secured by (a) first priority security interests in and liens on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement (as defined below)) and the assets of the Netherlands Loan Parties (as defined in the Prepetition ABL Credit Agreement) constituting Collateral (as defined in the Prepetition ABL Credit Agreement (collectively, the "***Prepetition ABL Priority Collateral***"); and (b) second priority security interests in and liens on the Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement) (the "***Prepetition***

US-DOCS\116793113.8RLF1 23655575v.1

*Term Priority Collateral*" and, together with the Prepetition ABL Priority Collateral, the "*Prepetition Collateral*", and such liens and security interests in clauses (a) and (b), the "*Prepetition ABL Liens*").  For purposes of this Final Order, "*Payment in Full*" or "*Paid in Full*" means, as to any of the obligations, (a) the indefeasible repayment in full in cash of all of the applicable obligations (including principal, interest, fees, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility, (b) the cash collateralization of (or termination of and payment of all outstanding amounts under) all treasury and cash management obligations, hedging obligations, swap obligations, and bank product obligations, in each case, in accordance with the terms of the applicable credit facility, (c) the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility; (d) the termination or expiration of the commitments to lend under the applicable credit facility, (e) the cash collateralization in respect of any asserted or threatened claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which any such agent, lender or secured party may be entitled as indemnification by any Debtor or other DIP Obligor pursuant to the indemnification provisions in the applicable credit facility, (f) with respect to the Prepetition Term Facility Obligations (as defined below), the Partial Term Roll-Up Loans, the Partial ABL Roll-Up, and the Prepetition ABL Obligations (i) the expiration of the applicable Challenge Period (as defined below) without the timely and proper commencement of a Challenge Proceeding (as defined below), or (ii) if an applicable Challenge Proceeding is timely and properly asserted prior to the expiration of the Challenge Period, (x) the final, non-appealable disposition of such adversary proceeding or contested matter in favor of the applicable secured parties by

14

order of a court of competent jurisdiction or (y) the satisfaction of subclauses (a) through (e) and subclause (g) of this definition with respect to such Prepetition Term Facility Obligations, Partial Term Roll-Up Loans, Partial ABL Roll-Up or Prepetition ABL Obligations, as applicable, as such amounts may be modified by a final, non-appealable order entered by a court of competent jurisdiction in the applicable adversary proceeding or contested matter in favor of the plaintiff or movant, and (g) the receipt by the applicable Agent of (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases from the Debtors and other Obligors (as defined herein) (including any party acting on behalf of any of the Debtors or their estates, if applicable) in form and substance satisfactory to each Agent and, with respect to the Term Obligations, the applicable required lenders.

(ii)       <u>Prepetition Term Facility</u>.   Libbey Glass Inc., as borrower, Libbey Glass Inc., certain other parties designated as "Guarantors" thereto (such parties, collectively, the "***Prepetition Term Facility Obligors***" and, together with the Prepetition ABL Obligors, the "***Prepetition Obligors***" and, together with the DIP Obligors, the "***Obligors***"), the lenders from time to time party thereto (collectively, the "***Prepetition Term Lenders***" and, together with the Prepetition ABL Lenders, the "***Prepetition Lenders***"), and Cortland, as administrative agent and collateral agent (as successor to Citibank, N.A., in its capacities as administrative agent and collateral agent) (Cortland, in such capacities, the "***Prepetition Term Facility Agent***" and, together with the Prepetition ABL Agents, the "***Prepetition Agents***," and together with the DIP Agents, the "***Agents***", and the Prepetition Term Facility Agent together with the Prepetition Term Lenders, the "***Prepetition Term Facility Secured Parties***" and, together with the Prepetition ABL Secured Parties, the "***Prepetition Secured Parties***"), are parties to that certain Senior Secured Credit Agreement, dated as of April 9, 2014 (as

15

amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Prepetition Term Facility Credit Agreement***" and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Term Facility Secured Parties, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "***Prepetition Term Facility Documents***" and, together with the Prepetition ABL Loan Documents, the "***Prepetition Documents***").   Pursuant to the Prepetition Term Facility Credit Agreement, the Prepetition Term Lenders provided the Prepetition Term Facility Obligors with a term loan facility (the "***Prepetition Term Facility***") with loans having the aggregate principal amount of $440,000,000 (the "***Prepetition Term Loans***").   As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $377,931,063.24 in respect of loans and other extensions of credit made, plus accrued and unpaid interest and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition Term Facility Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (in each case to the extent constituting "Obligations" under and as defined in the Prepetition Term Facility Credit Agreement, collectively, the "***Prepetition Term Facility Obligations***" and, together with the DIP Term Loan Obligations, the "***Term Obligations***", and Prepetition Term Facility Obligations together with the Prepetition ABL Obligations, the "***Prepetition Obligations***")), which obligations are guaranteed on a joint and several basis by all of the Guarantors (as

16

defined in the Prepetition Term Facility Credit Agreement). The Prepetition Term Facility is secured by (a) first priority security interests in and liens on the Prepetition Term Priority Collateral; and (b) second priority security interests in and liens on the Prepetition ABL Priority Collateral of the Debtors (but are not secured by security interests in and liens on the assets of the Netherlands Loan Parties (as defined in the Prepetition ABL Credit Agreement)) (such liens and security interests in clauses (a) and (b), the "*Prepetition Term Facility Liens*" and, together with the Prepetition ABL Liens, the "*Prepetition Liens*").

        (iii)        <u>Prepetition Intercreditor Agreement</u>. JPM, in its capacity as Prepetition ABL Agent, Cortland, in its capacity as Prepetition Term Facility Agent, and the Debtors are parties to that certain Intercreditor Agreement, dated as of April 9, 2014 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "*Prepetition Intercreditor Agreement*"), which Prepetition Intercreditor Agreement will be amended and restated by the DIP Intercreditor Agreement.

        (iv)        <u>Prepetition Collateral</u>. To secure the Prepetition Obligations, the Debtors (and, with respect to the Prepetition ABL Facility, the Netherlands Loan Parties (as defined in the Prepetition ABL Credit Agreement)) entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' respective security interests in the Prepetition Collateral (such agreements, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "*Prepetition Collateral Documents*"). Pursuant to the Prepetition Collateral Documents, and on the terms set forth therein and subject to the Prepetition Intercreditor Agreement, the Debtors granted to the Prepetition Secured Parties the

Prepetition Liens on the Prepetition Collateral (provided that the Prepetition Liens on the Prepetition Collateral of the Netherlands Loan Parties (as defined in the Prepetition ABL Credit Agreement) were only granted to secure the Prepetition ABL Obligations).

(v)     Prepetition Obligations.  The Prepetition Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms, and no portion of the Prepetition Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, attack, effect, reduction, set-off, offset, counterclaim, cross-claim, recoupment, rejection, defenses, disallowance, impairment, recovery, subordination (whether equitable, contractual, or otherwise), or any other claim or challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

(vi)     Prepetition Liens.  The Prepetition Liens granted to the Prepetition Secured Parties: (a) constitute legal, valid, binding, enforceable, and perfected security interests in and liens on the Prepetition Collateral, (b) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (c) are not subject to defense, counterclaim, recharacterization, subordination (whether equitable, contractual, or otherwise), avoidance, recovery, attack, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(vii)     No Challenges/Claims.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or

18

Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees with respect to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553 (inclusive), or 558 of the Bankruptcy Code or applicable state law equivalents.  The Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code (but subject to section 506(a) of the Bankruptcy Code).

(viii)    <u>Indemnity</u>.  Each of the DIP Secured Parties and the Prepetition Secured Parties has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facilities and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Prepetition Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facilities or the application or use of Cash Collateral, and all postpetition documents related to any and all transactions contemplated by the foregoing.

19

Accordingly, each of the Prepetition Secured Parties and DIP Secured Parties shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct.

(ix)     Release.  Subject to paragraph 15 of this Final Order, each of the Debtors and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns have provided to each of the Released Parties (as defined below) the releases provided in paragraph 31 of the Interim Order and have agreed to provide releases to each of the Released Parties (as defined below) as provided in paragraph 31 of this Final Order.

(x)     Cash Collateral.  The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents of the Debtors, including any cash in deposit accounts of the Debtors, whether as Prepetition ABL Priority Collateral or Prepetition Term Priority Collateral, as income, proceeds, products, rents or profits of other Prepetition ABL Priority Collateral or Prepetition Term Priority Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "*Cash Collateral*").

F.     Findings Regarding the Postpetition Financing and Use of Cash Collateral.

(i)     Request for Postpetition Financing.  The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of the Interim Order, this Final Order, the other DIP Documents, and satisfaction of the

20

conditions set forth in the DIP Agreements, to continue to extend the DIP Loans on the terms

and conditions set forth in the Interim Order, this Final Order and the other DIP Documents.

(ii)        Need for Postpetition Financing and Use of Cash Collateral.

The Debtors do not have sufficient liquidity, including Cash Collateral, to operate and

maintain their businesses in the ordinary course of business without the financing requested in

the Motion.   The Debtors' ability to maintain business relationships with their vendors,

suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth

herein, and to otherwise fund their operations and other efforts and activities is essential to the

Debtors' continued viability as the Debtors seek to maximize the value of the assets of the

Estates for the benefit of all creditors of the Debtors.   The ability of the Debtors to maintain

sufficient working capital and liquidity through the proposed postpetition financing

arrangements with the DIP Secured Parties and the use and application of Cash Collateral as

set forth in the Interim Order, this Final Order, the DIP Agreements, and the other DIP

Documents, as applicable, is vital to the preservation and maintenance of the going concern

value of each Debtor.   Accordingly, the Debtors have a need to maintain the postpetition

financing and to use Cash Collateral as set forth in the Interim Order and this Final Order to,

among other things, permit the orderly continuation of the operation and maintenance of their

businesses, roll-up a portion of the Prepetition Term Facility Obligations pursuant to the

Partial Term Roll-Up and roll-up a portion of the Prepetition ABL Obligations pursuant to the

Partial ABL Roll-Up, minimize the disruption of their business operations and other efforts

and activities, and preserve and maximize the value of the assets of the Debtors' Estates to

maximize the recovery to all creditors of the Estates.

(iii)        <u>No Credit Available on More Favorable Terms</u>.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors assert in the Motion, the First Day Declaration, and in the DIP Loan Declarations, and demonstrated at the Interim Hearing and the Final Hearing, that it would be futile under the circumstances for the Debtors to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by each of the DIP Secured Parties pursuant to the DIP Documents, which includes the Partial Term Roll-Up and Partial ABL Roll-Up.  In light of the foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facilities represent the best financing available to the Debtors at this time, and are in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)        <u>Budget</u>.  The Debtors have prepared and delivered to the DIP Agents an initial budget (the "***Initial Budget***"), a copy of which is attached hereto as **<u>Exhibit C</u>**.  For purposes hereof: (a) "***Budget***" means a rolling 13-week cash flow forecast delivered on or prior to the Petition Date and every fourth week thereafter (the last day of each week being referred to herein as a "***Reporting Date***") within three (3) Business Days after the end of each such fourth week, setting forth all forecasted receipts and disbursements of the Debtors and their subsidiaries on a weekly basis for such 13-week period beginning as of the week of the Petition Date, which shall include, among other things, available cash, revenue,

22

cash flow, trade payables and ordinary course expenses, total expenses and capital expenditures, fees and expenses relating to the DIP Facilities, vendor disbursements, liquidity, net operating cash flow and net cash flow, fees and expenses related to the Chapter 11 Cases (including, for the avoidance of doubt, professional fees), working capital and other general corporate financial needs; *provided*, that each such proposed Budget shall only be deemed to constitute a Specified Budget if consented to in writing by the DIP ABL Agent and by the Required DIP Lender Group (as defined in the DIP Term Loan Agreement) (the "***Budget Consent Parties***") (the Initial Budget and any other Budget approved after the Initial Budget pursuant to the procedures set forth herein, the "***Specified Budget***") and until such consent is given, the previously approved Budget shall be the Specified Budget; and (b) "***Permitted Variances***" has the meaning set forth in the applicable DIP Agreements.  Additional variances, if any, from the Specified Budget shall be subject to the written consent of the Budget Consent Parties.

(v)        Certain Conditions to DIP Facilities.  The DIP Secured Parties' willingness to make and continue to make the DIP Loans and other financial accommodations under the DIP Facilities was and is conditioned upon, among other things: (a) the Debtors' obtaining Court approval to enter into the DIP Documents and to incur all of the obligations thereunder, and to confer upon the DIP Secured Parties all applicable rights, powers, and remedies thereunder and under the Interim Order and this Final Order; (b) the Debtors' compliance with the Milestones (as defined in the DIP Term Loan Agreement and the DIP ABL Credit Agreement); (c) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code under the Interim Order and this Final Order, subject to the DIP

23

Intercreditor Agreement; (d) the DIP Secured Parties being granted, under the Interim Order and this Final Order, as security for the prompt payment of the DIP Obligations, subject to the Carve Out and the priorities described in this Final Order and the DIP Intercreditor Agreement, superpriority perfected security interests in and liens upon substantially all property and assets of the Debtors, including, but not limited to, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Collateral, and (ii) all property and assets of the Debtors (whether existing as of the Petition Date or after-acquired, tangible or intangible, and comprising real or personal property) that, as of the Petition Date or permitted by Section 546(b) of the Bankruptcy Code, were not otherwise subject to valid, perfected, enforceable, and unavoidable security interests, including any property or assets consisting of "Excluded Assets" or "Excluded Collateral" (or a term of like meaning) under any of the Prepetition Documents (collectively hereinafter referred to as the "***DIP Collateral***" which, for avoidance of doubt, (x) shall exclude the Avoidance Actions (as defined below) but shall include the proceeds (the "Avoidance Proceeds") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions") and (y) shall exclude the Debtors' leasehold interest in that certain lease between STAG Industrial Holdings, LLC and World Tableware, Inc. with respect to the Debtors' facility at 1850 Blackhawk Drive, West Chicago, IL 60185 but shall include the proceeds of such leasehold interest (including, without limitation, any amounts that are payable to Debtors thereunder))); (e) the DIP ABL Secured Parties being granted, as security for the prompt payment of the DIP ABL Facility and all

24

other obligations of the Debtors under the DIP ABL Documents, subject to the Carve Out (which, with respect to the assets of the Foreign Subsidiary Guarantors (as defined below), the Foreign Subsidiary Guarantors have agreed to) and the priorities described in the Interim Order, this Final Order and the DIP Intercreditor Agreement, a first priority, senior secured priority interest in all or substantially all of the assets of the Foreign Subsidiary Guarantors (as defined in the DIP Term Loan Agreement) in accordance with applicable foreign law pursuant to the DIP Documents (the "*Additional ABL Priority Collateral*," and, together with the Prepetition ABL Priority Collateral, the "*DIP ABL Priority Collateral*") and a third priority interest in the Prepetition Term Priority Collateral (junior to the interests securing the DIP Term Loan Facility and Prepetition Term Loan Facility); and (f) the DIP Term Facility Secured Parties being granted under the Interim Order and this Final Order, as security for the prompt payment of the DIP Term Facility and all other obligations of the Debtors under the DIP Term Loan Facility Documents, subject to the Carve Out (which, with respect to the assets of the Foreign Subsidiary Guarantors, the Foreign Subsidiary Guarantors have agreed to) and the priorities described in the Interim Order, this Final Order and the DIP Intercreditor Agreement, a first priority, senior secured priority interest in the Prepetition Term Priority Collateral and a third priority interest in the DIP ABL Priority Collateral (junior to the interests securing the DIP ABL Facility and Prepetition ABL Facility).

(vi)        Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to the Interim Order and this Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance

upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facilities, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

        (vii)        <u>Sections 506(c) and 552(b)</u>.  The Debtors have agreed as a condition to obtaining financing under the DIP Facilities and the use of Cash Collateral that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facilities and the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in the Interim Order and this Final Order, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facilities to the extent set forth in the Interim Order and this Final Order, (b) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their liens and claims to the Carve Out, and (c) the application and use of Cash Collateral as set forth in the Interim Order and this Final Order, the terms of the DIP Agreements, and the terms of the Interim Order and this Final Order, each of the DIP Secured Parties and the Prepetition Secured Parties are entitled to receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

        (viii)        <u>Good Cause</u>.  Good cause has been shown for the entry of the Interim Order and this Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses, on-going operations and other applicable activities and efforts and (b) preserve and maximize the value of the

Debtors' Estates for the benefit of all the Debtors' creditors.  The extensions of credit under the DIP Facilities, the Interim Order and this Final Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facilities, the Interim Order and this Final Order are the product of reasonable, arm's-length, good faith negotiations between the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties.

(ix)    Partial Roll-Up of Prepetition ABL Obligations.  The partial roll-up of the Prepetition ABL Obligations (the "*Partial ABL Roll-Up*") (but subject to the Carve Out and provisions of paragraph 15) is necessary as the Prepetition ABL Secured Parties have not otherwise consented to the use of their Cash Collateral, the subordination of their liens to the Carve Out, the DIP ABL Liens, the DIP Term Loan Liens (in respect of the "Term Priority Collateral" (as defined in the DIP Intercreditor Agreement, the "*DIP Term Loan Priority Collateral*") and the Prepetition Term Facility Adequate Protection Liens (as defined below) (in respect of the Prepetition Term Priority Collateral), in each case as provided in the Interim Order and this Final Order, or the extension of credit to fund the Debtors' critical working capital needs in the form of the DIP ABL Facility.  Pursuant to the Partial ABL Roll-Up, subject to the provisions of paragraphs 10 and 15, the Prepetition ABL Secured Parties were pursuant to the Interim Order and hereby are authorized to: (a) upon entry of the Interim Order, deem the outstanding or otherwise extant Letters of Credit, Banking Services Obligations and Swap Obligations (each as defined in the Prepetition ABL Credit Agreement) to be issued or otherwise incurred under the DIP ABL Facility, (b) deem all Cash Collateral coming into the possession or control of the Debtors as a repayment of the Prepetition ABL Obligations (other than the Prepetition Dutch Loans) and concurrent dollar-

27

for-dollar funding of DIP ABL Loans and (c) upon entry of this Final Order, deem all outstanding Prepetition ABL Obligations (other than the Prepetition Dutch Loans) as repaid through a deemed funding of DIP ABL Loans in such amount.

(x)        Partial Roll-Up of Prepetition Term Facility Obligations.  The partial roll-up of the Prepetition Term Facility Obligations (the "***Partial Term Roll-Up***") (but subject to the provisions of paragraph 10 and 15 hereof) is necessary as the Prepetition Term Facility Secured Parties have not otherwise consented to the use of their Cash Collateral, the subordination of their liens to the Carve Out, the DIP ABL Liens, the DIP Term Loan Liens and the Prepetition ABL Adequate Protection Liens, in each case as provided in the Interim Order and this Final Order, or the extension of credit to fund the Debtors' critical working capital needs in the form of the DIP Term Loan Facility.  Pursuant to the Partial Term Roll-Up, subject to the provisions of paragraphs 10 and 15, the Prepetition Term Lenders are authorized to convert $1.00 of Prepetition Term Loans held by the DIP New Money Term Loan Lenders into Partial Term Roll-Up Loans for each $1.00 of DIP Term Loans funded by the DIP New Money Term Lenders, (x) upon entry of the Interim Order, up to an aggregate amount of $30,000,000, and (y) upon entry of this Final Order, up to an additional aggregate principal amount of $30,000,000 (resulting in Partial Term Roll-Up Loans of $60,000,000 in the aggregate).

(xi)        Adequate Protection.  Subject to the Challenge Period, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in the Interim Order and this Final Order.

28

(xii)    <u>Final Hearing</u>.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required for the relief to be granted in this Final Order.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and the Final Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

I.    ***Authorization and Conditions to Financing and Application and Use of Cash Collateral***.

1.    <u>Motion Granted</u>.  The Motion is granted to the extent provided in this Final Order. Any objections to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.    <u>Authorization of DIP Financing and Application and Use of Cash Collateral</u>.

(a)    The Debtors were pursuant to the Interim Order and hereby are authorized and empowered to execute and deliver the DIP Documents and to borrow, incur, and guarantee (as applicable), (i) DIP ABL Loans and letters of credit, pursuant to the terms and conditions of the DIP ABL Documents, this Final Order, and the Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents, the Interim Order and this Final Order), up to an aggregate principal amount of $100,000,000 in DIP ABL Commitments and together with all other Banking Services Obligations, Swap Obligations and Terminated Swap Obligations (each as defined under the DIP ABL Credit Agreement); and (ii) DIP Terms Loans, pursuant to the terms and conditions of the DIP Term Loan Facility Documents, the Interim

29

Order, this Final Order, and the Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents, the Interim Order and this Final Order), in an aggregate principal amount of up to $60,000,000.

(b)    The Debtors were pursuant to the Interim Order and hereby are authorized to (i) borrow under the DIP Facilities, apply Cash Collateral to the Prepetition ABL Obligations (until the outstanding Prepetition ABL Obligations (other than the Prepetition Dutch Loans) have been deemed repaid and, after all Prepetition ABL Obligations (other than the Prepetition Dutch Loans) have been repaid (or deemed repaid), use Cash Collateral in accordance with the Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents and this Final Order), in each case, during the period commencing on the date of the Interim Order through and including the occurrence of a DIP Termination Event (as defined below) solely in accordance with, and for the purposes permitted by, the Interim Order, this Final Order, the other DIP Documents, and the Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents, the Interim Order and this Final Order), (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Agreements and the other DIP Documents, all pursuant to the terms and conditions of the Interim Order, this Final Order, the Specified Budget, the DIP Agreements, and the other DIP Documents, (iii) complete the Partial ABL Roll-Up (subject to the Carve Out and the provisions of paragraph 15), and (iv) complete the Partial Term Roll-Up (subject to the Carve Out and the provisions of paragraph 15).

3.    Financing Documents.

a.    *Authorization*.    The Debtors were pursuant to the Interim Order and hereby are authorized to enter into, execute, deliver, and perform all obligations under the DIP

Documents. No obligation, payment, transfer, or grant of security under the Interim Order, this Final Order or under the DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity; *provided, however*, the Partial ABL Roll-Up, the Partial Term Roll-Up and the grant of Prepetition Adequate Protection Liens and Prepetition Adequate Protection Claims shall be subject to the provisions of paragraph 15.

b. *Approval; Evidence of Borrowing Arrangements.* All terms, conditions, and covenants set forth in the DIP Documents (including, without limitation, each of the DIP Agreements) shall be binding on the Debtors. All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Agents, and the DIP Secured Parties, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of each DIP Agreement and the other DIP Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees, and other expenses, including, without limitation, all of each DIP Agent's and DIP Secured Party's closing, arranger, and administrative fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Documents. The DIP Documents are effective and shall continue to evidence the DIP

31

Obligations, which DIP Documents and DIP Obligations shall continue to be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases (collectively, the "*Successor Cases*"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of the Interim Order, this Final Order and the other DIP Documents.

c.    *Payment of DIP Fees and Other Expenses*.  Any and all fees and expenses payable pursuant to the DIP Documents (collectively, any and all such fees and expenses, the "*DIP Fees*") were pursuant to the Interim Order and hereby are approved and the Debtors shall pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agents and the DIP Secured Parties incurred at any time, as provided by the Interim Order, this Final Order and the other DIP Documents in accordance with paragraph 11 hereof.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

d.    *Amendments to DIP Documents*.  Subject to the terms and conditions of the applicable DIP Documents and DIP Intercreditor Agreement, the DIP Obligors and the applicable DIP Secured Parties may make amendments, modifications, or supplements to any DIP Document, and the DIP Agents (acting at the direction of the Required Lenders (as defined in the applicable DIP Agreements) if so required by the applicable DIP Documents) and any requisite DIP Lenders may waive any provisions in the DIP Documents, without further approval of the Court; *provided*, that any amendments, modifications, or supplements to any DIP Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder (other than the application of default interest), or existing fees or add new fees

32

thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Documents (collectively, the "***Material DIP Amendments***"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to the U.S. Trustee and counsel to the Committee; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within five (5) Business Days following receipt of such Material DIP Amendment must be approved by the Court.  For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court (i) from the applicable DIP Secured Parties to the extent required under the applicable DIP Documents, and (ii) from the applicable Prepetition Agents for any amendment, modification, supplement, or waiver that materially adversely affects any rights of any Prepetition Secured Parties hereunder or the treatment of the Prepetition Obligations hereunder.

4.     <u>Partial ABL Roll-Up</u>.  Subject to the challenge rights in paragraph 15 of this Final Order and to the Carve Out, upon the entry of the Interim Order and the satisfaction or waiver of all other closing conditions in the DIP ABL Credit Agreement, without any further action by the Debtors, the Court or any other party, (x) all Letters of Credit, Banking Services Obligations, and Swap Obligations (as each term is defined in the Prepetition ABL Credit Agreement), and all obligations under or in connection therewith, were deemed re-issued and otherwise incurred under and subject to the DIP ABL Documents and constituted DIP ABL Obligations and (y) all Cash Collateral coming into the possession or control of the Debtors were applied (or deemed applied) to the Prepetition ABL Obligations (other than the Prepetition Dutch Loans) with a concurrent dollar-for-dollar funding of DIP ABL Loans in such amount.  Subject to the challenge

33

rights in paragraph 15 of this Final Order and to the Carve Out, upon the entry of this Final Order, without any further action by the Debtors, the Court or any other party, all outstanding Prepetition ABL Obligations (other than the Prepetition Dutch Loans) shall be deemed repaid through a deemed funding of DIP ABL Loans in such amount. Until Payment in Full of the Prepetition ABL Obligations, all liens, security interests and claims of the Prepetition ABL Agent (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein (subject to the Carve Out) and in the DIP Intercreditor Agreement and the Prepetition ABL Loan Documents shall remain in full force and effect; *provided, however,* that, subject to the results of any applicable Challenge Proceeding, to the extent the Prepetition ABL Obligations have been paid or satisfied pursuant to the Partial ABL Roll-Up or the application (or deemed application) of Cash Collateral and have become and are DIP ABL Obligations, such Prepetition ABL Obligations shall not be due or owing separately under the Prepetition ABL Loan Documents (provided that the Prepetition Dutch Loans remain outstanding and owing by the Prepetition Dutch Borrower but are guaranteed by the Debtors under the DIP ABL Facility); *provided, further, however,* until Payment in Full of the Prepetition ABL Obligations, nothing in the foregoing proviso shall alter or diminish, or be deemed to alter or diminish, the Adequate Protection Obligations (as defined herein) of the Prepetition ABL Agent and the Prepetition ABL Secured Parties.

5.    <u>Partial Term Roll-Up</u>.  Subject to the challenge rights in paragraph 15 of this Final  Order and the Carve Out, upon the entry of this Final Order, the satisfaction or waiver of all other closing conditions in the DIP Term Loan Agreement, without any further action by the Debtors, the Court or any other party, Prepetition Term Facility Obligations in the aggregate amount of $60,000,000 (or such lesser amount that is deposited by the Lenders into the Funding

Account, whether or not advanced to the Debtors, inclusive of the $30,000,000 rolled up pursuant to the Interim Order) shall be subject to the DIP Term Loan Facility Documents and shall constitute DIP Term Facility Obligations.  Until the Payment in Full of all Prepetition Term Facility Obligations, all liens, security interests and claims of the Prepetition Term Facility Agent (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein (subject to the Carve Out) and in the DIP Intercreditor Agreement and the Prepetition Term Facility Documents shall remain in full force and effect; *provided, however,* that, subject to the results of any applicable Challenge Proceeding, to the extent the Prepetition Term Facility Obligations have been rolled-up pursuant to the Partial Term Roll-Up and are DIP Term Loan Obligations, such Prepetition Term Facility Obligations shall not be due or owing separately under the Prepetition Term Facility Documents; *provided, further, however,* until Payment in Full of the Prepetition Term Facility Obligations nothing in the foregoing proviso shall alter or diminish, or be deemed to alter or diminish, the Adequate Protection Obligations of the Prepetition Term Facility Agent and the Prepetition Term Facility Lenders. Notwithstanding anything to the contrary contained herein, in the event that there is a timely and properly asserted Challenge Proceeding (as defined below) that is successful pursuant to a final, non-appealable order with respect to either the Prepetition ABL Obligations or the Prepetition Term Facility Obligations, this Court may fashion any appropriate remedy in respect of such successful Challenge Proceeding, including, without limitation, unwinding, disallowing, and/or subordinating the Partial ABL Roll-Up or Partial Term Roll-Up, as applicable.

      6.    <u>Continuation of Prepetition Procedures</u>.  Except to the extent expressly set forth in the Prepetition Documents, the DIP Documents, or in other "first day" orders, all prepetition

practices and procedures for the payment, collection and application of proceeds of the Prepetition Collateral, sweeping, the turnover of cash, the delivery of property to the Prepetition Agents and the Prepetition Secured Parties, including the Deposit Account Control Agreements (as such term is defined in the Prepetition Documents) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption.  Notwithstanding the foregoing, except as otherwise specified in the DIP Term Loan Agreement, the proceeds of all DIP Term Loans shall be funded or credited to a non-interest bearing account in the name of the DIP Term Loan Agent (the "***Funding Account***"), which Funding Account shall not be subject to any liens, claims, or encumbrances of the DIP ABL Secured Parties or the Prepetition ABL Secured Parties (including, but not limited to, the DIP ABL Liens, Prepetition ABL Liens, ABL Superpriority Claims, or the Prepetition ABL Adequate Protection Liens).  The Borrower may, subject to conditions precedent specified in the DIP Term Loan Agreement, withdraw or apply funds from the Funding Account solely to pay (w) one or more disbursements set forth as a line item in the Specified Budget in an amount not to exceed the amount for such line item set forth in the then effective Specified Budget (subject to permitted variances and other exclusions set forth in the DIP Documents and this Final Order), (x) any fees or other amounts due and payable to the DIP Term Loan Lenders or the DIP Term Loan Agent, (y) such other amounts that are due and payable under the DIP Term Loan Facility Documents or (z) fund the Carve Out as set forth herein; *provided*, that none of the foregoing shall limit the payment of professional fees that benefit from the Carve Out, as and when allowed (including on an interim basis).  For the avoidance of doubt, the DIP Term Loans shall be outstanding and accrue interest at the rate set forth herein notwithstanding that the proceeds thereof may be held in the Funding Account.

US-DOCS\116793113.8RLF1 23655575v.1

7.    <u>Indemnification</u>.  The Debtors were pursuant to the Interim Order and hereby are authorized to indemnify and hold harmless the DIP Agents, each DIP Secured Party, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Documents.

II.    ***Postpetition Lien; Superpriority Administrative Claim Status***.

8.    <u>Postpetition Liens</u>.

(a)    *Postpetition DIP Lien Granting*.  To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the DIP Obligors to the DIP Secured Parties of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Agents, for the benefit of themselves and the respective DIP Secured Parties, were granted pursuant to the Interim Order, and hereby are granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (such security interests and liens as to the DIP ABL Facility, the "***DIP ABL Liens***" and, such security interests and liens as to the DIP Term Loan Facility, the "***DIP Term Loan Liens***," and, collectively, the "***DIP Liens***") in and upon all DIP Collateral constituting property or assets of the Debtors, subject to the Carve Out, the Permitted Liens[5] and the rankings and priority set forth in paragraph 8(b) below and the DIP Intercreditor Agreement.

---

[5]    For purposes of this Final Order, "***Permitted Liens***" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens.

US-DOCS\116793113.8RLF1 23655575v.1

(b)    *DIP Lien Priority in DIP Collateral*.

(i)    <u>DIP ABL Liens Rankings and Priority</u>.  The DIP ABL Liens on the DIP Collateral securing the DIP ABL Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the DIP ABL Liens on (A) the DIP ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve Out and Permitted Liens; and (B) the DIP Term Loan Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve Out, Permitted Liens, the DIP Term Loan Liens, the Prepetition Term Facility Liens, and the Prepetition Term Facility Adequate Protection Liens, in each case as such priorities are set forth in the DIP Intercreditor Agreement.

(ii)    <u>DIP Term Loan Liens Rankings and Priority</u>.  The DIP Term Loan Liens on the DIP Collateral securing the DIP Term Loan Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the DIP Term Loan Liens on (A) the DIP ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve Out, Permitted Liens, the DIP ABL Liens, the Prepetition ABL Liens, and the Prepetition ABL Adequate Protection Liens (as defined below); and (B) the DIP Term Priority Collateral (whether in existence on the Petition Date or

US-DOCS\116793113.8RLF1 23655575v.1

hereafter arising) shall be subject to the Carve Out and Permitted Liens, in each case as such priorities are set forth in the DIP Intercreditor Agreement.

(c)    *Postpetition Lien Perfection*.  The Interim Order and this Final Order shall each be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, the execution and/or filing of intellectual property security agreements with any applicable intellectual property filing office, the execution and/or recording of mortgages or deeds of trust with respect to real property, or requirement to register liens on any certificates of title (a "***Perfection Act***").  Notwithstanding the foregoing, if any DIP Agent or Prepetition Agent, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Agent or Prepetition Agent, as applicable, is authorized to perform such act, and the Debtors shall perform such act to the extent necessary or required by the Interim Order, this Final Order, the other DIP Documents, or the Prepetition Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  Any DIP Agent or Prepetition Agent, as applicable, may choose to file, record, or present a certified copy of the Interim Order or this Final Order in the same manner as a

Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of the Interim Order or this Final Order in accordance with applicable law.  Should any DIP Agent or Prepetition Agent, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of the Interim Order and this Final Order.

(d)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by the Interim Order or this Final Order (including the DIP Liens and the Prepetition Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law was pursuant to the Interim Order and hereby is pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the Court; *provided*, *however*, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of the Interim Order and this Final Order, to the extent that any DIP Agent or Prepetition Agent, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by the Interim Order and this Final Order without further action by the DIP Agent or Prepetition Agent, as applicable.

(e)     Except as provided in this Final Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim (other than the Carve Out) heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

(f)     For the avoidance of doubt, the granting of DIP Liens pursuant to the Interim Order and this Final Order shall not extend to any property or assets of any Obligors that are not Debtors and any liens granted on property or assets of any Obligors that are not Debtors are subject to separate documentation pursuant to the terms of the DIP Documents.

9.     <u>DIP Loan Superpriority Administrative Expenses</u>.  Subject to the priorities set forth in the DIP Intercreditor Agreement and the Carve Out, on account of all DIP Obligations now existing or hereafter arising pursuant to the Interim Order, this Final Order, the other DIP Documents, or otherwise, the DIP Agents, for the benefit of themselves and the DIP Secured Parties, were pursuant to the Interim Order and hereby are granted allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all

41

administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (including Avoidance Proceeds) (such superpriority administrative expense claim as to the DIP ABL Facility, the "*DIP ABL Superpriority Claim*" and, such superpriority administrative expense claim as to the DIP Term Loan Facility, the "*DIP Term Loan Superpriority Claim*" and, collectively, the "*DIP Superpriority Claims*").

      10.   <u>Carve Out</u>.

      a.   <u>Generally</u>.  As used in this Final Order, the "*Carve Out*" means the sum of the following: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (collectively, the "*Statutory Fees*"); (ii) all reasonable and documented fees and out-of-pocket expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court in an amount not to exceed $25,000 (the "*Chapter 7 Trustee Carve Out*"); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees, costs, and out-of-pocket expenses (including, for the avoidance of doubt, any financing fee payable to the Debtors' investment banker, Lazard Frères & Co. LLC, on account of the financings described herein, but excluding, solely with respect to the Prepetition ABL Priority Collateral and DIP ABL Priority Collateral, any other transaction or success fees payable to any professional) incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "*Debtor Professionals*") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code

(collectively, the "*Committee Professionals*" and, together with the Debtor Professionals, the "*Professional Persons*," and such fees, costs, and out-of-pocket expenses of the Professional Persons as and when allowed, the "*Allowed Professional Fees*") at any time before or on the first (1st) Business Day following delivery by the DIP ABL Agent or DIP Term Loan Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice and, subject to the procedures described below, without regards to whether such fees, costs, and out-of-pocket expenses are provided for in the Specified Budget or when invoiced (with the aggregate amount under this clause (iii) not exceeding the ABL Professional Fee Carve Out Cap (defined below)) solely with respect to the Prepetition ABL Priority Collateral and DIP ABL Priority Collateral); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first (1st) Business Day following delivery by the DIP ABL Agent or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "*Post-Carve Out Trigger Notice Cap*").    For purposes of the foregoing, "*Carve Out Trigger Notice*" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Agent or DIP Term Loan Agent to the Debtors, their lead restructuring counsel, the other DIP Agent, the U.S. Trustee, and counsel to the Committee, which notice (x) may be delivered only following the occurrence and during the continuation of an Event of Default under the DIP ABL Agreement or the DIP Term Loan Agreement, respectively, and (y) shall state that the Post Carve Out Trigger Notice Cap has been invoked.  So long as the Carve Out Trigger Notice has not been delivered as provided above, the Debtors shall be permitted to pay Allowed Professional Fees, including on an interim basis, as they become due and payable.  For the avoidance of doubt, notwithstanding anything to the contrary contained in this Final Order,

US-DOCS\116793113.8RLF1 23655575v.1

nothing in the Interim Order, this Final Order or any Specified Budget shall be construed as a cap or limitation on the amount of Statutory Fees that are due and payable by the Debtors.

      b.     <u>Fee Estimates</u>.

      i.     Not later than 7:00 p.m. New York time on the third (3rd) Business Day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors and the DIP Agents a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "***Estimated Fees and Expenses***") incurred during the preceding week by such Professional Person (through Saturday of such week, the "***Calculation Date***"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "***Weekly Statement***"); *provided*, *that* within one (1) Business Day of the occurrence of the Carve Out Trigger Notice Date, each Professional Person shall deliver to the Debtors and the DIP Agents one additional statement (the "***Final Statement***") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Carve Out Trigger Notice Date.

      ii.     If any Professional Person fails to deliver a Weekly Statement to the Debtors and the DIP Agents within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any, and as to itself only and not as to any other Professional Person) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the week preceding such Calculation Date for which such Professional Person failed to deliver such Weekly Statement shall be limited to the aggregate

unpaid amount of Allowed Professional Fees included in the Specified Budget for such week for such applicable Professional Person (each an "***Unreported Period Amount***").

iii.      Solely as it relates to the DIP ABL Agent and DIP ABL Lenders, any deemed draw and borrowing pursuant to paragraph 10(c)(i)(x) for amounts under paragraph 10(a)(iii) above shall be limited to the greater of (without duplication) (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements of all Professional Persons timely received by the Debtors and the DIP Agents prior to the Carve Out Trigger Notice Date *plus*, (II) all Unreported Period Amounts of all Professional Persons, plus, (III) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors and the DIP Agents pertaining to the period through and including the Carve Out Trigger Notice Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Specified Budget for the period prior to the Carve Out Trigger Notice Date (such greater amount, the "***ABL Professional Fee Carve Out Cap***"). For the avoidance of doubt, the DIP ABL Agent shall be entitled to maintain at all times a reserve (the "***Specified ABL Reserve***") in an amount (the "***Specified ABL Reserve Amount***") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and the DIP Agents <u>plus</u> all Unreported Period Amounts of all Professional Persons, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Specified Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed Professional Fees set forth in the Specified Budget for the following week occurring after the most recent Calculation Date, *plus* (iv) the amounts contemplated under paragraph 10(a)(i) and 10(a)(ii) above. Not later than 7:00 p.m. New York time on the fourth (4th) Business Day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP ABL Agent and the DIP Term Loan Agent a report setting forth a

calculation of the Specified ABL Reserve Amount (including (i) the Estimated Fees and Expenses incurred during the preceding week by each Professional Person as set forth in the Weekly Statements, (ii) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements of all Professional Persons, and (iii) all Unreported Period Amounts (if any) of all Professional Persons) as of such time (the "***Fee Report***"), and, in setting the Specified ABL Reserve and calculating the ABL Professional Fee Carve Out Cap, the DIP ABL Agent and DIP ABL Lenders shall be entitled to rely upon such reports in accordance with the DIP ABL Agreement and all amounts set forth in the Fee Reports shall be deemed conclusive evidence therefor (absent manifest error or mistake in calculation). The DIP ABL Agent and DIP ABL Lenders shall be permitted to increase the amount of the Specified ABL Reserve to the extent of any discrepancy between the information contained in the Fee Report and any other information received by the DIP ABL Agent.

iv.    Prior to the delivery of the first report setting forth the calculation of the Specified ABL Reserve Amount, the DIP ABL Agent may calculate the Specified ABL Reserve Amount by reference to the Specified Budget for subsection (i) of the Specified ABL Reserve Amount. Notwithstanding anything herein to the contrary, the DIP ABL Agent may increase the Specified ABL Reserve Amount to include additional amounts for the projected amount of any success, completion, commission-based, or other non-hourly fees billed by or due to any financial advisor, investment banker, monitor, or other Professional Person engaged by any Debtor or the Committee.

c.    Carve Out Reserves.

i.    On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Agent or the DIP Term Loan Agent in accordance with paragraph 10(a) above (the "***Carve Out Trigger Notice Date***"), the Carve Out Trigger Notice (x) shall be deemed *first*, (i) a draw

46

request and notice of borrowing by the Debtors for loans to be made under the DIP ABL Credit Agreement in an amount equal to the sum of (1) the amounts set forth in paragraphs 10(a)(i) and 10(a)(ii) above, plus (2) the then unpaid amounts of the Allowed Professional Fees up to the ABL Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP ABL Obligations and shall be accompanied by a concurrent dollar-for-dollar reduction in any reserve against availability under the DIP ABL Facility that was established in respect of the Carve Out), and *second,* (ii) a draw request and notice of borrowing by the Debtors for loans to be made under the DIP Term Loan Facility in an amount equal to the sum of (1) the amounts set forth in paragraphs 10(a)(i) and 10(a)(ii) above, plus (2) unpaid amounts of the Allowed Professional Fees (if any), up to the amount of the ABL Professional Fee Carve Out Cap, only to the extent not funded by the DIP ABL Lenders pursuant to clause (i) above, (any such amounts actually advanced shall constitute DIP Term Loan Obligations), and (y) shall also constitute a demand to the Debtors to utilize all cash on hand as of such date (including in the Funding Account) and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of the amounts set forth in paragraphs 10(a)(i)-10(a)(iii) above (up to the amount of the ABL Professional Fee Carve Out Cap with respect to amounts in paragraph 10(a)(iii))(which cash amounts actually utilized or reserved (including from cash on hand) shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP ABL Obligations and DIP Term Loan Obligations pursuant to the foregoing clauses (i) and (ii) of this sentence of this paragraph 10(c)(i)). The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees and amounts set forth in paragraphs 10(a)(i) and 10(a)(ii) (the "***Pre-Carve Out Trigger Notice Reserve***"). For the avoidance of doubt, the Pre-Carve Out Trigger Notice Reserve shall comprise three separate and independent reserves made up of the following: (i) a reserve to pay the obligations

US-DOCS\116793113.8RLF1 23655575v.1

set forth in paragraph 10(a)(i) above; (ii) a reserve to pay the obligations set forth in paragraph 10(a)(ii) above, and (iii) a reserve to pay the obligations set forth in paragraph 10(a)(iii) above.

ii.     On the Carve Out Trigger Notice Date, the Carve Out Trigger Notice shall also be deemed *first*, (x) a draw request and notice of borrowing by the Debtors for loans to be made under the DIP ABL Credit Agreement in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Obligations) and, *second*, (y) only to the extent not funded by the DIP ABL Lenders, a request by the Debtors for loans to be made under the DIP Term Loan Facility in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loan Obligations), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date (including in the Funding Account) and any available cash thereafter held by any Debtor, after the funding in full of the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts actually utilized or reserved (including from cash on hand) shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP ABL Obligations and DIP Term Loan Obligations pursuant to the foregoing clauses (x) and (y) of this sentence of this paragraph (c)(ii)). The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***").

iii.     On the third (3rd) Business Day following the Carve Out Trigger Notice Date, notwithstanding anything herein or in the DIP ABL Agreement, the DIP Term Loan Agreement, or the other DIP Documents to the contrary, including without limitation with respect to (1) the existence of a Default (as defined in the DIP ABL Agreement or the DIP Term

48

Loan Agreement) or Event of Default, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP ABL Obligations under the DIP ABL Agreement or DIP Term Loans under the DIP Term Loan Agreement, respectively, (3) any termination of the DIP ABL Commitments or DIP New Money Term Loan Commitments following an Event of Default, or (4) the occurrence of the maturity date under the applicable DIP Agreement, each DIP ABL Lender and DIP Term Loan Lender shall make available to the DIP ABL Agent or DIP Term Loan Agent, as applicable, such DIP ABL Lender's or such DIP Term Loan Lender's pro rata share of such DIP ABL Obligations or DIP Term Loans as required by paragraphs 10(c)(i) and (c)(ii) above, as applicable.

      d.    <u>Application of Carve Out Reserves</u>.

      i.    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in paragraphs 10(a)(i) through 10(a)(iii) above (the "***Pre-Carve Out Amounts***"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to sub-paragraph (iii) below, all remaining funds in the Pre-Carve Out Trigger Notice Reserve shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations, up to the amount funded by the DIP ABL Lenders, until the Payment in Full of the DIP ABL Obligations, and *second,* to the DIP Term Agent on account of the DIP Term Loans.

      ii.    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in paragraph 10(a)(iv) above (the "***Post-Carve Out Amounts***"). If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to sub-paragraph (iii) below, all remaining funds in the Post-Carve Out Trigger Notice Reserve shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations, up to the amount

49

funded by the DIP ABL Lenders, until the Payment in Full of the DIP ABL Obligations, and *second,* to the DIP Term Facility Agent on account of the DIP Term Loans.

        iii.      Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, the Interim Order, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 10(c) above, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments set forth in paragraphs 10(d)(i) or 10(d)(ii) above.

        iv.      Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP ABL Agent, the Prepetition ABL Agent, the DIP Term Loan Agent, and the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash in the Funding Account and cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs 10(d)(i) and (d)(ii) above.

        v.      Except to the extent expressly provided by further order of the Court, the Debtors may use funds held in the Carve Out Reserves only to pay Allowed Professional Fees, to pay the other amounts included in the Carve Out in the manner set forth in this Final Order, and to distribute remaining funds in the Carve Out Reserves pursuant to paragraphs 10(d)(i), (ii) and (iii), and not for any other purpose.

        vi.      Notwithstanding anything set forth herein or in the DIP Agreements to the contrary, (a) the budget for the fees and expenses of each of the Committee's and Debtors' advisors as set forth in the attached Budget shall not be reduced without the express

written consent of the Committee and the applicable advisor, and the Debtor and the applicable advisor, respectively, and (b) for purposes of variance testing, to the extent that the amount of fees and expenses set forth in any Committee advisors' Weekly Statement or any Debtor advisors' Weekly Statement is less than the amount budgeted for such Committee advisor or Debtor advisor for the applicable week under the Budget, then the excess amount of fees and expenses budgeted for any such Committee or Debtor advisor shall carry over and be applied in any future variance testing period.

        e.      <u>Other Priority Matters</u>.

        i.      For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order, this Final Order, the DIP Documents, or the Prepetition Documents, the Carve Out shall be senior to the DIP Obligations, the Prepetition Obligations, and any other claims arising under or in connection with the DIP Documents or the Prepetition Documents (and any and all security interests and liens securing such claims), the DIP Superpriority Claims, the liens and claims securing the DIP Facilities, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, the Prepetition Adequate Protection Claims, or the Prepetition Obligations; <u>provided that</u> the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to the Interim Order or this Final Order to secure payment of the Carve Out shall be limited to any shortfall in funding of the Carve Out Reserves.

        ii.      Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, the Interim Order or this Final Order, subject to the limitations with respect to the DIP ABL Agent, DIP ABL Lenders, Prepetition ABL Agent and Prepetition ABL Lenders set forth in paragraph 10(b) above with respect to the ABL Professional Fee Carve Out Cap, (i) the

51

failure of the Specified ABL Reserve to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, (ii) in no way shall any Specified Budget, Carve Out, ABL Professional Fee Carve Out Cap, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees or Statutory Fees due and payable by the Debtors or that may be allowed by the Court at any time (including on an interim basis), and (iii) the Debtors' authority to use proceeds from the DIP Facility, the DIP Collateral, and/or Cash Collateral (including from the Funding Account) solely on account of and to timely pay Allowed Professional Fees and Statutory Fees and the other obligations benefitting from the Carve Out shall in no way be limited or deemed limited by any Specified Budget.

   f. <u>No Direct Obligation To Pay Allowed Professional Fees</u>. Without limiting the scope of the Carve Out, the DIP Agents and the DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Without limiting the scope of the Carve Out, nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Agents or the DIP Lenders, or any issuing bank of Letters of Credit, in any way, to directly pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

   g. <u>Reservation of Rights</u>. Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to these Carve Out provisions.

  11. <u>Prepetition Secured Parties Adequate Protection</u>.

   (a) <u>Adequate Protection Claims and Liens</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the

Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection, the Prepetition Secured Parties have been pursuant to the Interim Order and are hereby granted the following, in each case subject to the priorities set forth in the DIP Intercreditor Agreement, the challenge rights in paragraph 15 of this Final Order, and the Carve Out (collectively, the "***Adequate Protection Obligations***"):

(i)      Prepetition ABL Adequate Protection Liens. The Prepetition ABL Secured Parties have been pursuant to the Interim Order and are hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "***Prepetition ABL Adequate Protection Liens***"), which liens shall be, with respect to: (A) the DIP ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve Out, Permitted Liens, and the DIP ABL Liens; and (B) the DIP Term Loan Priority Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve Out, Permitted Liens, the DIP Liens, the Prepetition Term Facility Liens, and the Prepetition Term Facility Adequate Protection Liens, in each case as such priorities are set forth in the DIP Intercreditor Agreement.

(ii)      Prepetition Term Facility Adequate Protection Liens.      The Prepetition Term Facility Parties have been pursuant to the Interim Order and are hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon

53

the DIP Collateral (the "***Prepetition Term Facility Adequate Protection Liens***" and, together with the Prepetition ABL Adequate Protection Liens, the "***Prepetition Adequate Protection Liens***"), which liens shall be, with respect to: (A) the DIP ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve Out, Permitted Liens, the DIP Liens, the Prepetition ABL Liens, and the Prepetition ABL Adequate Protection Liens; and (B) the DIP Term Loan Priority Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve Out, Permitted Liens, and the DIP Term Loan Liens, in each case as such priorities are set forth in the DIP Intercreditor Agreement.

(iii)    <u>Adequate Protection Payments</u>.  All interest on the loans under the Prepetition Term Facility, including accrued and unpaid interest as of the Petition Date and interest accruing thereafter, shall accrue interest at the default rate under the Prepetition Term Facility Credit Agreement and be paid in kind by adding such accrued interest to the unpaid principal amount of the loans under the Prepetition Term Facility on the date such interest is due and, to the extent permitted under the Bankruptcy Code and by the Court, be deemed part of the Prepetition Term Facility Secured Parties' secured claim for all purposes, including for purposes of any credit bid under section 363(k) of the Bankruptcy Code.  Interest on the loans under the Prepetition ABL Facility shall accrue interest at the rate of interest applicable to loans under the DIP ABL Facility (such amount having been negotiated between the Debtors and the Prepetition ABL Lenders and having an applicable margin that is less than the applicable margin for the default rate under the Prepetition ABL Credit Agreement) and all Cash Collateral applied to the Prepetition ABL Obligations in accordance with the Interim Order or this Final Order will be

applied in accordance with the provisions of the Prepetition ABL Credit Agreement until Payment in Full of the Prepetition ABL Obligations.

(iv)    <u>Adequate Protection Superpriority Claims</u>.    The Prepetition Secured Parties have been pursuant to the Interim Order and are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "***Prepetition Adequate Protection Claims***"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  The Prepetition Adequate Protection Claims shall be payable from all prepetition and postpetition property of the Debtors (including Avoidance Proceeds), subject to the Carve Out, Permitted Liens, and the DIP Obligations and shall be subject to the priorities set forth in the DIP Intercreditor Agreement.

(v)    For the avoidance of doubt, the granting of Prepetition Adequate Protection Liens pursuant to the Interim Order and this Final Order shall not extend to any property or assets of any Obligors that are not Debtors and any liens granted on property or assets of any Obligors that are not Debtors are subject to separate documentation pursuant to the terms of the DIP Documents.

(b)    <u>Reporting</u>.  The Debtors shall timely provide the Prepetition Secured Parties with (x) reasonable access to the Debtors' facilities, management, books, and records required under the Prepetition Documents, and (y) copies of all financial reporting provided to the DIP Agent and DIP Secured Parties pursuant to the DIP Documents substantially simultaneously with such delivery to the DIP Secured Parties.

(c)    <u>Fees and Expenses</u>.  As additional adequate protection, the Debtors (x) have paid in cash, to the extent invoiced (x) within three (3) Business Days of entry of the Interim Order, all accrued and unpaid reasonable prepetition fees and expenses of (1) the Prepetition ABL Secured Parties (including all reasonable fees and expenses of Goldberg Kohn Ltd. ("*GK*"), AlixPartners, L.L.P. ("*AlixPartners*"), Womble Bond Dickinson (US) LLP ("*Womble*"), and any local counsel retained by any of the Prepetition ABL Agents, and not more than one primary counsel for each of the Prepetition ABL Lenders), and (2) the Prepetition Term Facility Secured Parties (including all reasonable fees and expenses of Arnold & Porter Kaye Scholer LLP ("*A&P*"), Young Conaway Stargatt & Taylor, LLP ("*YCST*"), Ankura Consulting Group, LLC ("*Ankura*"), and any other local counsel retained by any of the Prepetition Term Facility Secured Parties), and (y) shall pay, to the extent invoiced after entry of the Interim Order, monthly payment in cash of the reasonable and documented costs, fees, and expenses of (1) the Prepetition ABL Secured Parties (including reasonable fees and expenses of (A) one primary counsel (which shall be GK) and one local counsel in each applicable jurisdiction to the Prepetition ABL Agents including, but not limited to, Womble, (B) any advisor retained by the Prepetition ABL Agents (which shall be AlixPartners), and (C) not more than one primary counsel for each of the Prepetition ABL Lenders), and (2) the Prepetition Term Facility Secured Parties (including reasonable fees and expenses of (A) one primary counsel (which shall be

56

A&P) and one local counsel in each applicable jurisdiction to each of the Prepetition Term

Lenders and the Prepetition Term Facility Agent, including, but not limited to, YCST, and (B)

any advisor retained by the Prepetition Term Facility Secured Parties (which shall be Ankura).

All payments of professional fees, expenses, and disbursements authorized under this paragraph

11 shall be made following ten (10) days (which time period may be extended by the applicable

professional) (the "*Review Period*") after the receipt by the Debtors, the Committee, and the U.S.

Trustee of invoices therefor (the "*Invoiced Fees*") and without the necessity of filing formal fee

applications.  The invoices for such Invoiced Fees shall include the total aggregate number of

hours billed and a summary description of services provided and the expenses incurred by the

applicable professional; *provided*, *however*, that any such invoice may be redacted to protect

privileged, confidential, or proprietary information and shall not be required to contain time

entries.  The Debtors, the Committee, and the U.S. Trustee may object to any portion of the

Invoiced Fees (the "*Disputed Invoiced Fees*") within the Review Period by filing with the Court

a motion or other pleading, on at least ten (10) days' prior written notice to the applicable

Prepetition Secured Parties of any hearing on such motion or other pleadings, setting forth the

specific objections to the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees

that are not Disputed Invoiced Fees promptly (but in no event later than five (5) Business Days)

after expiration of the Review Period; and (ii) any Disputed Invoiced Fees within five (5)

Business Days after approval by the Court by a final order requiring payment of any previously

Disputed Invoiced Fees.  Subject to paragraph 15 hereof, payments of any amounts set forth in

this paragraph are not subject to avoidance, subordination, or disgorgement; *provided*, *however*,

that, notwithstanding anything herein to the contrary, in the event that there is a timely and

properly asserted Challenge Proceeding that is successful pursuant to a final, non-appealable

57

order or to the extent that any payment of interest (including any interest paid in kind), fees, or expenses made hereunder as adequate protection to the Prepetition Secured Parties is made on behalf of a claim of the Prepetition Secured Parties later found to be not entitled to such payment of interest, fees, or expenses under section 506(b) of the Bankruptcy Code, then such payment may be recharacterized and applied as payment of the principal amounts owed under the Prepetition Documents, and shall be applied against the Prepetition Secured Parties' prepetition secured claims as applicable, or, with respect to the payment of interest in kind, such payment may be disallowed.

(d)    Reservation of Rights Regarding Adequate Protection.    Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided in the Interim Order and this Final Order is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided*, that the Prepetition Secured Parties may request further or different adequate protection, and the Debtors or any other party in interest with standing may contest any such request.    For the avoidance of doubt, the rights of the Prepetition Secured Parties, the Debtors, the Committee, and all other parties in interest in respect of whether any Diminution in Value has occurred and the extent of any Diminution in Value are reserved.

III.    ***Default; Waivers; Rights and Remedies; Relief from Stay***.

12.    DIP Termination Events.    The occurrence and continuation of an "Event of Default" under and as defined in any DIP Agreement shall constitute a "DIP Termination Event" hereunder (each, a "***DIP Termination Event***"), unless waived in writing by the applicable DIP Secured Parties in accordance with the applicable DIP Documents.

58

13.    <u>Rights and Remedies upon a DIP Termination Event</u>.

(a)    Immediately upon the occurrence and during the continuation of a DIP Termination Event, but subject to the terms and conditions of the DIP Intercreditor Agreement, the DIP Agents shall each be entitled to independently be permitted to, and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise, was pursuant to the Interim Order and is hereby modified, without further notice to, hearing of, or order from the Court, to the extent necessary to permit any DIP Agent to, upon the delivery of written notice (which may include electronic mail) to the DIP Remedies Notice Parties (as defined below): (i) declare all DIP Obligations owing under their respective DIP Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains (including provision of any letters of credit); (iii) terminate the DIP Facilities and any DIP Documents as to any future liability or obligation of the DIP Secured Parties thereunder, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) terminate and/or revoke the Debtors' right, if any, under this Final Order and the DIP Documents to use any Cash Collateral; (v) invoke the right to charge interest at the default rate under the DIP Documents; (vi) freeze monies or balances in the Debtors' accounts; (vii) otherwise enforce any and all rights against the DIP Collateral in the possession of the applicable DIP Agent, including, without limitation, disposition of the DIP Collateral solely for application towards the Carve Out and the DIP Obligations in accordance with their respective priorities; and (viii) take any other actions or exercise any other rights or remedies with respect to the DIP Collateral permitted under the Interim Order, this Final Order, the DIP Documents, or applicable law; *provided*, that prior to the exercise of any right in clauses (vi), (vii) and (viii) of this paragraph, the applicable DIP Agent shall be required to provide at

59

least five (5) Business Days' written notice (which notice shall be delivered by email) to counsel to the Debtors, counsel to the other DIP Agent, counsel to the Prepetition Agents, counsel to the Committee, and the U.S. Trustee (the "***DIP Remedies Notice Parties***") of the DIP Agent's intent to exercise its rights and remedies (the "***DIP Remedies Notice Period***").

(b)    During the DIP Remedies Notice Period, the Debtors may continue to use Cash Collateral solely for the purpose of funding the Carve Out in accordance with the terms of this Final Order.  During the DIP Remedies Notice Period, the Debtors and any other party in interest shall be entitled to seek an emergency hearing with the Court with respect to the alleged DIP Termination Event.

(c)    Unless during such DIP Remedies Notice Period the Court determines that a DIP Termination Event has not occurred and is continuing, unless the Court orders otherwise, the applicable DIP Agent shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations (subject to the Carve Out), occupy the Debtors' premises (to the extent not prohibited by and subject to applicable law) to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by applicable law and by the DIP Documents (including the DIP Intercreditor Agreement) (to the extent not prohibited by applicable law), in each case, without further notice to, hearing of, or order from the Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise.

(d)    The Debtors (i) shall reasonably cooperate with the applicable DIP Agent in its exercise of rights and remedies, whether against the DIP Collateral or otherwise, and (ii) unless the Court orders otherwise, may not contest or challenge the exercise of any such rights or

60

remedies other than to dispute whether a DIP Termination Event has in fact occurred and is continuing.

14.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law were pursuant to the Interim Order and hereby are modified without further notice, application, or order of the Court to the extent necessary to (i) permit the DIP Agents and the Prepetition Agents to perform any act authorized or permitted under or by virtue of the Interim Order, this Final Order, the DIP Agreements, or the other DIP Documents, as applicable, including, without limitation, to (A) implement the postpetition financing arrangements authorized by the Interim Order and this Final Order, (B) take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral with respect to the DIP Superpriority Claims or Adequate Protection Claims, (iii) assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Documents and apply such payments to the Prepetition Obligations (subject to the Carve Out), and (iv) subject to the Remedies Notice Period, take any action and exercise all rights and remedies provided to it by the Interim Order, this Final Order, the other DIP Documents, or applicable law.

IV.    ***Representations and Covenants***.

15.    <u>Effect of Stipulations</u>.

a.    *Binding on the Debtors*.    The Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order, including, without limitation, in paragraph E above (collectively, the "***Debtors' Stipulations***"), shall be binding

US-DOCS\116793113.8RLF1 23655575v.1

upon the Debtors in all circumstances and for all purposes effective as of the entry of the Interim Order.

b. *Binding on Third Parties*. The Debtors' Stipulations shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless each of the following three criteria are satisfied:

(i) <u>Challenge Period</u>. Such committee or any other party in interest (subject to in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing and requisite authority granted by the Court, has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 15) by no later than the date that is the earlier of (y) for the Committee, August 28, 2020; and (z) for all other parties in interest, 75 days from the entry of the Interim Order (such time period established by the foregoing clauses (y) and (z), the "***Challenge Period***"). In the event that a party in interest files a motion seeking standing to pursue causes of action on behalf of the Debtors' estates (a "***Standing Motion***"), complete with an attached complaint, the Challenge Period shall be tolled from the time of the filing of such Standing Motion until, (a) if the Standing Motion is granted, five (5) business days after entry of an Order granting such Standing Motion, or (b) the Standing Motion is otherwise resolved.

(ii) <u>Challenge Proceeding</u>. Such adversary proceeding or other appropriate contested matter (A) objects to or challenges the amount, validity, perfection,

enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "*Challenge Proceeding*") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "*Representative*," and, collectively, the "*Representatives*") in connection with matters related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, and notwithstanding the Partial ABL Roll-Up and the Partial Term Roll-Up.

(iii)    <u>Final Non-Appealable Order</u>.  There is a final non-appealable order in favor of the plaintiff or movant in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.

c.    *Failure to File Challenge Proceeding*.  For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of such Challenge Proceeding.  If no such Challenge Proceeding is timely filed during the Challenge Period or the Court does not rule in favor of the plaintiff or movant in any such proceeding then: (i) the Debtors' Stipulations shall be binding on all parties in interest, including, without limitation, the Committee and any trustee (provided,

63

however, that if a chapter 7 or 11 trustee is elected or appointed before the Challenge Period expires, then such trustee shall have until the later of (1) the existing Challenge Period and (2) thirty days after appointment or election to bring a Challenge Proceeding); (ii) the obligations of the Debtors under the Prepetition Documents, including the Prepetition Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination (other than to the Carve Out), reduction, defense, setoff or avoidance, for all purposes in these Chapter 11 Cases, and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, counterclaim, recharacterization, subordination (other than to the Carve Out), or avoidance; (iv) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Debtors, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' Estates; and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' Estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties arising out of or relating to the Prepetition Documents shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph 15) on the Debtors, the Committee, and on any other person or entity, except to the extent that such Debtors' Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in the Interim Order or this Final Order vests

or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their Estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Documents, the Prepetition Obligations or the Prepetition Liens.  Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceedings, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released, and barred.  The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies.

V.    ***Other Rights and DIP Obligations***.

16.    <u>No Modification or Stay of this Final Order</u>.  The DIP Agents and the DIP Secured Parties have acted in good faith in connection with the DIP Facilities, the Interim Order and with this Final Order, and their reliance on the Interim Order and this Final Order is in good faith, and the DIP Agents and the DIP Secured Parties are entitled to the protections of Bankruptcy Code section 364(e).

17.    <u>Rights of Access and Information</u>.  The Debtors shall comply with the rights of access and information afforded to the DIP Secured Parties under the DIP Documents and the Prepetition Secured Parties under the Prepetition Documents.

18.    <u>Power to Waive Rights; Duties to Third Parties</u>.

(a)    Subject to the terms of the DIP Documents, the DIP ABL Agent and the DIP Term Loan Agent shall have the right (acting at the direction of the Required Lenders (as defined in the applicable DIP Agreements) if so required by the applicable DIP Documents) to

65

waive any of the terms, rights, and remedies provided or acknowledged in the Interim Order and this Final Order that are in favor of the DIP ABL Secured Parties and the DIP Term Loan Lenders, respectively (as applicable, the "***DIP Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights.  Any waiver by the DIP Agents of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agents or any DIP Secured Party to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert such delay in or failure to exercise or enforce any DIP Lender Right as a defense to any obligation owed by the Debtors to the DIP Agents or any DIP Secured Party.

(b)      Each of the Prepetition ABL Agent and the Prepetition Term Facility Agent shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in the Interim Order and this Final Order that are in favor of the Prepetition ABL Secured Parties and the Prepetition Term Secured Parties, respectively (as applicable, the "***Prepetition Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Lender Rights.  Any waiver by the Prepetition Agents of any Prepetition Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any Prepetition Lender Right shall neither constitute a waiver of such Prepetition Lender Right, subject the Prepetition Agents or any Prepetition Secured Party to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert such delay in or failure to exercise or enforce any

66

Prepetition Lender Right as a defense to any obligation owed by the Debtors to the Prepetition Agents or any Prepetition Secured Party.

19.    <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including inventory and Cash Collateral), other than pursuant to the terms of this Final Order or as permitted by the other DIP Documents, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Final Order, the Specified Budget and the other DIP Documents (including Permitted Variances and exclusions to the Specified Budget permitted thereunder and hereunder).  Proceeds of DIP Loans and Cash Collateral shall not be used (i) to finance any investigation (including discovery proceedings), initiation or prosecution of any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type against the DIP Agents, the DIP Secured Parties, the Prepetition Secured Parties, or any member thereof, or their respective rights and remedies under or in respect of the DIP Facilities, the Prepetition Documents, the Interim Order or this Final Order, and the Adequate Protection Obligations, (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating (other than to the Carve Out), in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the DIP Agents and the DIP Secured Parties or the Prepetition Secured Parties, including for the avoidance of doubt, (A) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the DIP Obligations or the DIP Liens, or (b) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Obligations or the Prepetition Liens under the Prepetition Documents, (iii) for any purpose that is prohibited under the Bankruptcy Code, the Interim Order, or this Final Order,

and (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Specified Budget, without the prior written consent of the Budget Consent Parties; *provided*, that none of the foregoing shall limit the payment of Allowed Professional Fees or Statutory Fees that benefit from the Carve Out, as and when allowed (including on an interim basis).  Notwithstanding the foregoing, no more than $145,000 of the proceeds of the DIP Facilities, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation of, but not litigation, or any objection or challenge to, the Prepetition Liens or the Prepetition Obligations. Notwithstanding the foregoing or anything herein to the contrary, nothing herein shall be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (including on an interim basis) with respect to any Committee investigation or Challenge Proceeding.

20.    <u>No Waiver</u>.  The failure of the DIP Agents, the DIP Secured Parties, the Prepetition Agents, or the Prepetition Secured Parties, as applicable, to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the other DIP Documents, the DIP Facilities, or the Prepetition Documents, as applicable, shall not constitute a waiver of any of the DIP Agents', the DIP Secured Parties', the Prepetition Agents', or the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein to the contrary, the entry of the Interim Order and this Final Order was and is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Agents, the DIP Secured Parties, the Prepetition Agents, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Agents, the DIP Secured Parties, the Prepetition Agents, and the Prepetition Secured Parties to: (a) request conversion of the Chapter 11 Cases to cases

under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties (and nothing herein limits the rights of the Debtors or any other party-in-interest from objecting or responding thereto).

21.    <u>Maintenance of Collateral</u>.    Unless the applicable DIP Agent, acting at the direction of the Required Lenders (as defined in the applicable DIP Agreements) if so required by the applicable DIP Agreement, otherwise consents in writing, until (i) the Payment in Full or otherwise acceptable satisfaction of the applicable DIP Obligations, and (ii) the termination of the applicable DIP Agent's and the DIP Lenders' obligations to extend credit under the applicable DIP Facility, the Debtors shall comply with the covenants contained in the DIP Documents regarding the maintenance and insurance of the DIP Collateral.  Effective upon entry of the Interim Order and to the fullest extent provided by applicable law, each of the DIP Agents (on behalf of the applicable DIP Secured Parties) were deemed pursuant to the Interim Order and shall continue to be deemed to be, without any further action or notice, named as additional insureds and lender's loss payees (as applicable) on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

22.    <u>Reservation of Rights</u>.  The terms, conditions, and provisions of the Interim Order and this Final Order are in addition to and without prejudice to the rights of each DIP Secured Party and each Prepetition Secured Party, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents, the Prepetition Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek

69

an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates (and nothing herein limits the rights of the Debtors or any other party-in-interest from objecting or responding thereto).  For the avoidance of doubt, any claims or liens granted in favor of the Prepetition Secured Parties or the DIP Secured Parties under this Final Order shall not be effective as against any Obligors that are not Debtors (or any property or assets of Obligors that are not Debtors) and nothing in this Final Order shall be deemed to limit the provisions of the Prepetition Documents and the DIP Documents as against such Obligors that are not Debtors (and any property and assets of the Obligors that are not Debtors) in favor of the Prepetition Secured Parties and the DIP Secured Parties.

23. <u>Binding Effect; Dismissal</u>.

(a)    All of the provisions of the Interim Order, this Final Order and the other DIP Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Secured Parties and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of each DIP Agent, DIP Secured Party, and Prepetition Secured Party set forth in the Interim Order and this Final Order, including, without limitation, the Debtors' Stipulations, subject to paragraph 15 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and application and use of Cash Collateral provided for under the Interim Order and this Final Order) provided or acknowledged in the Interim Order and this

70

US-DOCS\116793113.8RLF1 23655575v.1

Final Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying the Interim Order, this Final Order or any provision hereof. Except as specifically amended, supplemented or otherwise modified under this Final Order, all of the provisions of the Interim Order shall remain in full force and effect and are hereby ratified by this Final Order.

(b)    Subject to the Challenge Period, nothing in these Chapter 11 Cases may impair the DIP Superpriority Claims, the Prepetition Adequate Protection Claims, and the DIP Secured Parties' and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protection, and other rights granted pursuant to the terms of the Interim Order or this Final Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Adequate Protection Obligations are Paid in Full.  Notwithstanding any such dismissal, the Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in the Interim Order and this Final Order.

(c)  Except as set forth in this Final Order and to the extent provided in Section 364(e) of the Bankruptcy Code, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this Final Order or any of the other DIP Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims, or (iii) rights or priorities of any DIP Secured Party or Prepetition Secured Party pursuant to the Interim Order or this Final Order with respect to the DIP Collateral or any portion of the DIP Obligations, in each case arising or incurred prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as applicable, of the effective date of such modification, reversal, vacatur, or stay.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of the Interim Order and this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)  The Interim Order and this Final Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases, and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  The Interim Order and this Final Order shall also inure to the benefit of the Debtors, the DIP Agents, the DIP Secured Parties, the Prepetition Secured Parties, and each of their respective successors and assigns.

72

24.    <u>Discharge</u>.  The DIP Obligations and the obligations of the Debtors with respect to adequate protection under the Interim Order and this Final Order, including granting the Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Claims (in each case, subject to the provisions of paragraph 15), shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Payment in Full of such obligations occurs on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, has otherwise agreed in writing.

25.    <u>No Priming of the Prepetition Obligations</u>.  Notwithstanding anything to the contrary herein, from and after the entry of the Interim Order, absent the express written consent of the applicable Prepetition Lenders or as otherwise permitted by the DIP Intercreditor Agreement, no Debtor shall seek authorization from the Court to obtain or incur any indebtedness or enter into an alternative financing facility other than the DIP Facilities (a "***Competing DIP Facility***") seeking to impose liens on any Prepetition Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Liens held by the Prepetition Secured Parties; *provided*, *however*, that nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the Payment in Full of the DIP Obligations and the Adequate Protection Obligations at the initial closing of such Competing DIP Facility.

26.    <u>Section 506(c) Waiver</u>.  Without limiting the scope of the Carve Out, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the

US-DOCS\116793113.8RLF1 23655575v.1

preservation, protection, or enhancement of value by the DIP Agents or the DIP Secured Parties upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against any of the DIP Agents, the DIP Secured Parties, or the Prepetition Secured Parties, or any of the DIP Obligations, the Prepetition Obligations, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or the affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any Budget hereunder).

27.    Section 552(b) Waiver.  The Debtors have agreed as a condition to obtaining financing under the DIP Facilities and using Cash Collateral as provided in the Interim Order and this Final Order that the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Agents, the DIP Secured Parties, the DIP Obligations, the Prepetition Secured Parties, or the Prepetition Obligations.

28.    No Marshaling/Application of Proceeds.  In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Documents and the Prepetition Documents (including the DIP Intercreditor Agreement), as applicable. Notwithstanding anything to the contrary in this Final Order, but subject in all respects to the

74

Carve Out and the priorities set forth in the DIP Intercreditor Agreement, the respective DIP Obligations shall be satisfied from the proceeds of the DIP Collateral.

29.  <u>Payment of DIP Lender Fees and Expenses</u>.  To the extent invoiced, the Debtors shall pay (i) the reasonable and documented fees and expenses payable and reimbursable under the DIP Facilities, the DIP Agreements, or the other DIP Documents, as applicable, whether incurred before or after the Petition Date, and (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Agents and the DIP Secured Parties including, without limitation, reasonable and documented fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facilities, the DIP Agreements, or the other DIP Documents, in each case to the extent payable and reimbursable under the DIP Documents.  With respect to payment of fees and expenses incurred from and after the Petition Date, the DIP Agents and the DIP Secured Parties shall comply with the procedures set forth in paragraph 11 hereof.

30.  <u>Limits on Lender Liability</u>.

(a)  In determining to make any loan under the DIP Agreements and authorizing the application and use of Cash Collateral pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Secured Parties and the Prepetition Secured Parties, as applicable, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to

US-DOCS\116793113.8RLF1 23655575v.1

exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute), or (ii) owe any fiduciary duty to any of the Debtors.  Furthermore, nothing in the Interim Order or this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)     Nothing in the Interim Order, this Final Order or the other DIP Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)     As to the United States, its agencies, departments, or agents, nothing in the Interim Order, this Final Order or the other DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

31.     <u>Release</u>.  Subject to paragraph 15 of this Final Order, in addition to any releases granted to the Released Parties pursuant to the Interim Order (which remain in full force and effect and binding on the Debtors and their Estates to the extent set forth in the Interim Order and are unaffected by entry of this Final Order), each of the Debtors and its Estate, on its own behalf and on behalf of each of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties and each of the Prepetition Secured Parties, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees,

76

past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Released Parties**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Obligations and the DIP Obligations, or (ii) the DIP Documents and the Prepetition Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations and the DIP Obligations, the Prepetition Documents and the DIP Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Final Order.  The Debtors are authorized in any payoff letter or similar agreement into which

77

they enter upon Payment in Full of any DIP Obligations or Prepetition Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph 31, of the applicable DIP Agent(s), DIP Secured Parties, Prepetition Agent(s) and Prepetition Secured Parties and their respective related parties.

32.     <u>Survival</u>.  The provisions of the Interim Order and this Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases.  The terms and provisions of the Interim Order and this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agents, the DIP Secured Parties, and the Prepetition Secured Parties pursuant to the Interim Order and this Final Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by the Interim Order and this Final Order until (i) in respect of the DIP Facilities, there has been Payment in Full of all DIP Obligations, pursuant to this Final Order and the other DIP Documents, and (ii) in respect of the Prepetition Obligations, all of the Adequate Protection Obligations owed to the Prepetition Secured Parties

78

provided for in the Interim Order and this Final Order and under the Prepetition Documents have been Paid in Full and there has been Payment in Full of the Prepetition Obligations.

33.    <u>Proofs of Claim</u>.  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' Estates, neither the Prepetition Agent nor the other Prepetition Secured Parties will be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases, and the Debtors' Stipulations herein shall be deemed to constitute a timely filed proof of claim.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the Prepetition Secured Parties with respect to the Prepetition Obligations and the Adequate Protection Obligations.  Notwithstanding the foregoing, any of the Prepetition Agent, on behalf of itself and the applicable Prepetition Secured Parties, is hereby authorized and entitled, at the direction of the applicable Required Lenders (as defined in the applicable Prepetition Documents) to the extent required under the Prepetition Documents, to file (and amend and/or supplement) in the Debtors' lead Chapter 11 Case—*In re Libbey Glass Inc.,* (Case No. 20-11439 (LSS)) a single master proof of claim in the Chapter 11 Cases for any claims arising under the applicable Prepetition Documents and hereunder (a "***Master Proof of Claim"***).  Upon the filing of a Master Proof of Claim (if any), which shall be deemed asserted against each of the Debtors, the applicable Prepetition Secured Parties and each of their respective successors and assigns, shall be deemed to have filed a proof of claim against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Documents, and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns) shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  A

Master Proof of Claim, if filed, shall not be required to identify the name of any Prepetition Secured Party, whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 33 and the Master Proof of Claim are intended solely for the purpose of administrative convenience.  A Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

34.    Credit Bidding.    Subject to Section 363(k) of the Bankruptcy Code and the express written direction of the requisite Lenders required under the applicable DIP Agreements and the terms of the DIP Documents, either of the DIP Agents, on behalf of itself and the respective DIP Secured Parties, shall have the right to credit bid, in accordance with the DIP Documents and the DIP Intercreditor Agreement, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral (or any portion thereof) constituting property or assets of the Debtors.  Subject to Section 363(k) of the Bankruptcy Code and the express direction of the Required Lenders (as defined in the applicable Prepetition Documents) and the Prepetition Documents, either of the Prepetition Agents, on behalf of itself and the respective Prepetition Lenders, shall have the right to credit bid, in accordance with the Prepetition Documents and the DIP Intercreditor Agreement, up to the full amount of the applicable Prepetition Obligations (including any claims for Diminution in Value) in any sale of the Prepetition Collateral (or any portion thereof) constituting property or assets of the Debtors;

80

*provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof with respect to the Prepetition Obligations.

35.    <u>No Third-Party Rights</u>.  Except as specifically provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

36.    <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facilities shall be avoidable or recoverable from the DIP Agents or the DIP Secured Parties under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; *provided*, that nothing in this paragraph is intended to limit or curtail the provisions of paragraph 15 hereof with respect to the Prepetition Obligations.

37.    <u>Transfers</u>. All cash transfers from any Debtor to a non-Debtor affiliate are to be tracked, with such tracking information provided to the Committee on a weekly basis.  For the avoidance of doubt, the Committee's rights to object to any and all such transfers are expressly reserved, as is the ability of the Court to fashion adequate relief with respect to such transfers. Any transfer from any Debtor to a Foreign Subsidiary (as defined in the DIP Term Loan Agreement), for goods or services provided by such Foreign Subsidiary, must be in accordance with prepetition practices.

38.    <u>Reporting</u>. Notwithstanding anything to the contrary herein or in the DIP Documents, counsel to the Committee shall receive any and all reporting required to be provided to the DIP Lenders pursuant to the DIP Documents or pursuant to this Final Order, as such information is provided to the DIP Lenders; provided that such reporting may be marked as "professional eyes only" in the discretion of the Debtors.

US-DOCS\116793113.8RLF1 23655575v.1

39.    <u>Milestones</u>. The DIP Secured Parties shall not agree with the Debtors to shorten the Milestones (as defined in the DIP Term Loan Agreement and the DIP ABL Credit Agreement) without first obtaining the prior written consent of the Committee.

40.    <u>Reliance on Order</u>.  All postpetition advances under the DIP Documents are made in reliance on the Interim Order and this Final Order.

41.    <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Agents on behalf of the applicable DIP Secured Parties or the Prepetition Agents on behalf of the applicable Prepetition Secured Parties, pursuant to the provisions of the Interim Order or this Final Order, any subsequent order of the Court or the DIP Documents, shall, subject to the terms of this paragraph 15 and the Carve Out, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Carve Out Trigger Notice, subject to the Carve Out in all respects.

42.    <u>Order Governs</u>.  In the event of a conflict between the terms and provisions of any of the DIP Documents (including the DIP Intercreditor Agreement) or the Interim Order and this Final Order, the terms and provisions of this Final Order shall govern.

43.    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

44.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

82

45.     <u>General Authorization</u>.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in the Interim Order and this Final Order.

46.     <u>Retention of Exclusive Jurisdiction</u>.  The Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of the Interim Order, this Final Order, the DIP Agreements, and the other DIP Documents.

LAURIE SELBER SILVERSTEIN
83   UNITED STATES BANKRUPTCY JUDGE

**Dated: July 2nd, 2020**
**Wilmington, Delaware**
US-DOCS\116793113.8RLF1 23655575v.1